UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONJA R. GRIFFIN-ROBINSON,

                                Plaintiff,

                -against-

HON. BARRY E. WARHIT, et al,

                                Defendants.

20-CV-2712 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

Plaintiff, appearing *pro se*, brings this action alleging that Defendants violated her rights. By order dated April 23, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP). For the reasons set forth below, the Court grants Plaintiff leave to file a second amended complaint within sixty days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to

state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the

court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing

the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the

elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at

555. After separating legal conclusions from well-pleaded factual allegations, the court must

determine whether those facts make it plausible – not merely possible – that the pleader is

entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action against the state-court judge presiding over her pending

criminal case in the Westchester County Court – Justice Barry E. Warhit; the prosecutor of her

criminal case – Assistant District Attorney (ADA) Adrian Murphy; six members of the Harrison

Police Department[1] – Anthony Salou, Kevin Wong, Steven Palias, Alexandra Bucci, Robert

Forgione, and William Curow; seven members of the New York City Police Department

(NYPD) 26th Precinct – Darwin Marrero, Henry Bsutista, Marilin Perlta, Jacquelynn Opirhory,

---

[1] Although not clearly stated, Plaintiff's assertions suggest that these officers were also
acting on behalf of the Westchester County Police Department. (*See* ECF No. 4, at 16, 29-30.)

Gabriel Cabral, Gregory Ulses, and Richard Didonato; a social worker employed by Harlem Hospital – Lise Wilson; and Harlem Hospital NYC. She invokes the Court's federal question and diversity jurisdiction, alleging that Defendants violated her rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments of the U.S. Constitution, as well the Treaty of Peace and Friendship of 1786 between Morocco and the United States. Plaintiff further claims that Defendants failed to comply with their "oath of office, anti-bribery statements, foreign registration statements, certificate of participation, signed oath or [a]ffirmation from judge or grand jury, [and] bond number/EIN number." (ECF No. 4, at 4.)

The following facts are taken from Plaintiff's amended complaint and supporting documents. Plaintiff is a resident of Grant Houses, a public housing project in upper Manhattan operated by the New York City Housing Authority (NYCHA). On April 18, 2018, members of the Harrison Police Department and the NYPD 26th Precinct arrived at Plaintiff's residence with a "false warrant" issued by Judge Warhit, which was amended and "Void Ab Initio – No Stamp\Seal."[2] (*Id*. at 16.) The officers proceeded to search Plaintiff's home, often putting their hands on their guns while stating that Plaintiff, her son, and her friend were making the officers nervous. Plaintiff considered the officers' behavior threatening and can "still hear [the officers] saying mistakes happen and we get away with it." (*Id*. at 8.) The officers "commit[ed] burglary" by taking Plaintiff's and her family's personal property, including IDs, social security cards, birth certificates, clothes, and $10,000.00 in cash. (*Id*. at 16.) Plaintiff had proof that the money was lawfully obtained, but the officers stated that "no one would believe a project criminal." (*Id*.) The officers also planted a firearm in Plaintiff's apartment.

---

[2] Plaintiff indicates the existence of two warrants: the allegedly false warrant and another joint search warrant issued to both the Harrison and NYPD 26th Precinct officers. (*See* ECF No. 4, at 16.)

At some point, the officers threatened Plaintiff, her son, her grandchild, and her unborn grandchild in front of her building. Salou and some of his fellow officers from Harrison took Plaintiff's cane, roughly grabbed her, and handcuffed her tightly. Bucci and her partner then pushed Plaintiff into a car in front of her building, where Plaintiff sat for two hours while the tight handcuffs caused her hands to become swollen. Plaintiff explained to the officers that she was sick with serious medical conditions, including high blood pressure, but none of the officers cared. Although they had "snatched" Plaintiff's medications during the search of her home, they did not give them to her, telling her she would get them back at the police station, which did not happen. (Id. at 7.) In addition, although the officers were at Plaintiff's residence for about six to seven hours, they did not read Plaintiff her *Miranda* rights until she arrived at the police station. The officers also didn't care that by arresting Plaintiff they endangered the welfare of several minors in Plaintiff's home. Plaintiff had to beg her friend to stay with her son and the other children.

Plaintiff was charged with grand larceny and transferred to the Westchester County Jail, where she was told that she "needed to get home to take care of her medical conditions." (*Id* at 11.)

Plaintiff has reported the Harrison officers for their unlawful conduct, particularly their taking the $10,000.00 in cash. In its investigation of the matter, Internal Affairs interviewed Plaintiff, but would not allow her to review her notes of the incident. Plaintiff was told to try and identify the officers involved from pictures, but she couldn't remember all of their faces. Plaintiff believes that if she had been allowed to review her notes, she would have picked out all of the officers involved.

Plaintiff's criminal proceeding is pending in the Westchester County Court. Because of her medical issues, she has obtained multiple letters from her medical care provider at Harlem Hospital, excusing her from court appearances in the pending criminal case.[3] But Justice Warhit and ADA Murray, through Plaintiff's attorney, are continuously harassing her for more documentation of her medical conditions and had threatened to have her jailed if she did not show up for a court appearance on March 19, 2020, despite a medical letter advising her not to travel until May 2020. ADA Murphy has also contacted Harlem Hospital and discussed Plaintiff's medical conditions with Social Worker Wilson in violation of Plaintiff's HIPAA rights. Murphy informed Wilson of the criminal charges against Plaintiff, stating that Plaintiff was "dangerous" and had been "charged with a firearm" offense although she had not been charged with a crime involving a firearm.[4] (*Id.* at 9.) Wilson, in turn, placed this information in Plaintiff's medical file and defamed Plaintiff by informing others at Harlem Hospital of her conversation with Murphy. As a result, doctors and others at Harlem Hospital "now yell[] at [her] to get out their office." (*Id.*) Defendants are attempting to override medical recommendations that Plaintiff not travel for court appearances and have "stigmatize[d]" Plaintiff, "making [her] want to ignore the seriousness of [her] health until [she] finds another hospital which is totally unfair." (*Id.*)

---

[3] Since her arrest, Plaintiff has had a number of medical issues, including left-knee replacement surgery in September 2019, as a result of which she must use a walker, and a pulmonary embolism of the lung in November 2019, for which she is on blood thinners. Plaintiff has obtained multiple letters from her primary medical care provider, Nurse Practitioner Marlene Burrell at Harlem Hospital, advising her not to travel except for medical appointments. As a result of these letters, Plaintiff has been excused from multiple court appearances in the pending criminal case. On December 27, 2019, Burrell wrote a letter recommending that Plaintiff not travel until May 2020, when the blood thinners will likely be discontinued.

[4] Plaintiff asserts that the police "placed this alleged weapon on a friend of [hers] who will always be [her] friend." (ECF 4, at 9.)

In addition to contacting Wilson, Murray also told the management office of Plaintiff's building that she was not attending court appearances, and as result, she was given an eviction notice by NYCHA on March 4, 2020.

Plaintiff brings this action seeking relief for the allegedly unlawful search and seizure, false arrest, failure to provide her medications, violations arising in her criminal proceedings, and HIPAA violations stemming from Murray's and Wilson's discussion of her medical conditions. She also asserts that Wilson's actions at Harlem Hospital have led to "slander . . ., defamation of character, libel, embarrassment, discrimination, racial profiling, ostraci[sm], and . . . judg[ing] [her] incorrectly." (*Id*. at 9.) Plaintiff believes that the Harrison Police Department has a history of "corruption, favoritism, [and] nepotism," and attaches to the amended complaint various news articles of misconduct by members of the Harrison police force. (*Id*. at 10.) She urges the Court to Google the Harrison Police Department for related information. Plaintiff also seeks the return of the confiscated property, monetary damages, and a declaration that Defendants "are not above the law and held accountable." (*Id*. at 11.).

## DISCUSSION

Plaintiff brings this action asserting that Defendants violated her federal constitutional and statutory rights. As she brings this action against state actors, the Court construes the amended complaint as asserting claims under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

**A.      Claims against Police Officers**

**1.      Fourth Amendment Claims**

Plaintiff asserts that the police officers who executed the search warrant at her residence violated her rights under the Fourth Amendment by conducting an unlawful search, confiscating property, falsely arresting and imprisoning her, using excessive force against her, and denying her medications.

### *a.   Unlawful Search and Seizure*

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586 (1980), but searches and seizures conducted "pursuant to a warrant issued by a neutral magistrate [are] presumed reasonable because such warrants may issue only upon a showing of probable cause," *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]");*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991) ("[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause.). A plaintiff may overcome this presumption if he can "show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, Plaintiff appears to contend that the search warrant was invalid because it did not have a stamp or seal and was amended, resulting in an unlawful search and seizure. (*See* ECF No. 4, at 16.) But she does not allege any facts that would undermine the presumed validity of the warrant, such as any facts suggesting that the police officers obtained it through false statements or other misrepresentations. Plaintiff does not plausibly plead facts to overcome the presumption that the officers' search of her residence and seizure of property pursuant to the search warrant was reasonable. She therefore fails to state a claim that the officers unlawfully searched her home and seized property in violation of the Fourth Amendment.

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court therefore grants Plaintiff leave to file a second amended complaint.

In any second amended complaint, Plaintiff must provide the names of the individual officers involved in the search and seizure and allege facts suggesting that the officers' reliance on the warrant was not reasonable because it was facially invalid, or it was procured through fraud or other misrepresentations. Unsupported assertions that the police officers "illegally" or "unlawfully" searched Plaintiff's residence and seized property are not sufficient to state a claim.

### b. False Arrest and Imprisonment

Plaintiff asserts that members of the Harrison Police Department and the NYPD 26th Precinct falsely arrested and imprisoned her. Her false arrest and false imprisonment claims are addressed together as they are, for purposes of her allegations, the same. *See Posr v. Doherty*,

944 F.2d 91, 96 (2d Cir. 1991).[5] For the elements of a § 1983 false arrest claim, the Court first looks to state law. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of § 1983 claims and courts should not "mechanically apply" the law of New York State).

To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted).

If "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," the arrest is privileged, and the plaintiff cannot state a claim for false arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

---

[5] "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004) (quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting)).

"Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). Put another way, police officers may have had probable cause to arrest if they have acted reasonably, even if they were mistaken.

Plaintiff has not pleaded facts showing that she was arrested without probable cause. Her allegations suggest that "the facts known by the arresting officer[s] at the time of the arrest objectively provided probable cause to arrest." *Devenpeck*, 543 U.S. at 152. Plaintiff was arrested for grand larceny and her assertions concerning the confiscated $10,000.00 in cash and its legality suggest that the money may have been the basis for the arrest. Further, where the police are executing a valid search warrant, as they did here, they may arrest a suspect based on probable cause without the requirement of a separate arrest warrant. *See United States v. Russell*, 501 Fed. App'x. 67, 69 (2d Cir. 2012) (citing *Russell v. Harms*, 397 F.3d 458, 466 (7th Cir.2005)).

Plaintiff is granted leave to amend her false arrest and imprisonment claims. If she files a second amended complaint, she should allege any additional facts suggesting that the officers lacked probable cause to arrest her when they executed the search warrant. Plaintiff should include any facts indicating that the police entered her home pursuant to an unlawful search warrant, and that probable cause did not support her arrest.

**2.** Failure to Provide *Miranda* Warnings

The Fifth Amendment provides that a person shall not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966), that being interrogated in certain custodial

circumstances is inherently coercive and thus statements made under those circumstances are inadmissible unless the suspect is specifically informed of his rights and freely decides to forgo them. These *Miranda* warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *New York v. Quarles*, 467 U.S. 649, 654 (1984) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)); *see Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (A defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination.)). A plaintiff cannot base a § 1983 claim solely on the failure to administer *Miranda* warnings. *Neighbour v. Covert*, 68 F.3d 1508, 1510-11 (2d Cir. 1995) (*per curiam*). "The remedy for a violation of the right against self–incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'" *Deshawn E.*, 156 F.3d at 346 (quoting *Neighbour*, 68 F.3d at 1510).

Plaintiff's claim premised on the police officers' failure to provide her with *Miranda* warnings until several hours after her arrest must be dismissed because such a claim cannot proceed under § 1983.

### 3. Excessive Force Claim

Plaintiff's assertions that the police officers, took her cane, grabbed her left arm, handcuffed her tightly, and pushed her into a police car suggest that she may be seeking to bring an excessive force claim. A police officer's use of force is "excessive" and violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer.[6] *Lennon v. Miller*, 66 F.3d 416, 425–26 (2d Cir. 1995); *see also Maxwell v. City of New*

---

[6] This standard differs from the subjective standard applied under the Eighth Amendment to prisoners' claims of excessive force, *see Whitley v. Albers*, 475 U.S. 312, 320–21 (1986), and

*York*, 380 F.3d 106, 108 (2d Cir. 2004). To determine whether the amount of force used against a plaintiff was unreasonable, the Court must consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Excessive force claims require "serious or harmful" use of force. *Drummond v. Castro*, 522 F. Supp. 2d 667, 678–79 (S.D.N.Y. 2007) (internal quotation marks and citations omitted).

Handcuffing has been found to give rise to an excessive force claim where an individual suffers an injury as a result of excessively tight handcuffing *See Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015); *Kerman v. City of New York*, 261 F.3d 229, 239-40 (2d Cir. 2001); *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "'[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of *injury to the wrists*." *Lynch*, 567 F. Supp. 2d at 468 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)) (emphasis in original).

When considering these factors, "[t]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation marks omitted). A claim of tight "handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising."

---

the objectively unreasonable standard under the Fourteenth Amendment to a pretrial detainees' assertion of the use of force, *see Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015).

*Omor v. City of New York*, ECF 1:13-CV-2439, 55, 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27,

2015); *see also Caravalho v. City of New York*, ECF 1:13-CV-4174, 213, 2016 WL 1274575, at

*9 (S.D.N.Y. Mar. 31, 2016) (collecting cases); *Higginbotham v. City of New York*, 105 F. Supp.

3d 369, 377 (S.D.N.Y. 2015) (collecting cases).

Here, Plaintiff complains that the police took her cane, grabbed her left arm, handcuffed

her, and pushed her into a police car, where she remained handcuffed for at least two hours while

the search was conducted. She further asserts that the handcuffs were overly tight, causing her

hands to become swollen. But Plaintiff does she not allege that she complained to the officers

that the handcuffs were overly tight or that the injuries to her hands were more than temporary

bruising. Without more factual details about the extent of Plaintiff's injuries, it is unclear whether

Plaintiff can state an excessive force claim under the Fourth Amendment.

If Plaintiff submits a second amended complaint, she must provide more facts concerning

the police pushing her into the police car and tightly handcuffing her. Plaintiff must describe the

extent of her injuries and state whether at any time she complained to the police about the tight

handcuffs and whether she required medical treatment for any injuries she suffered.[7]

---

[7] Plaintiff's assertions regarding the police officers threatening her, her son, her friend, and others while touching their guns, without more, do not amount to an excessive force claim. Generally allegations of threats or brandishing of weapons without any allegation that plaintiff suffered physical harm are insufficient to state an excessive force claim. *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295-96 (S.D.N.Y. 2015). Although, "it is possible that verbal threats, combined with the brandishing of the weapon, could be unreasonable and therefore constitute excessive force," Plaintiff's assertions do not suggest that the officers acted unreasonably under the circumstances described. *Id*.; *cf. Kerman*, 261 F.3d at 233, 239-40 (2d Cir.2001) (holding that a statement by a police officer of "Listen you fucking nut-job, just hold still or I'll blow your brains out," could constitute verbal abuse that was "objectively unreasonable and therefore excessive" (internal quotation marks omitted)).

### 4.      Failure to Provide Medications

Plaintiff asserts that the police refused to give her medications for her serious medical

conditions. In the context of medical claims brought by pre-arraignment arrestees, courts in this

Circuit have applied standards under both the Fourth and the Fourteenth Amendment. *Compare*

*Goodwin v. Kennedy*, No. 13-CV-1774, 2015 WL 1040663, at *7 (E.D.N.Y. Mar. 10, 2015)

(applying the deliberate indifference standard of the Due Process Clause of the Fourteenth

Amendment to arrestees' denial of  medical treatment claims), *with Lewis v. Clarkstown Police*

*Dep't*, ECF 1:11CV-2487, 131, 2014 WL 6883468, at *5 (S.D.N.Y. Dec. 8, 2014) (applying the

Fourth Amendment standard to arrestee's denial of medical treatment claim). But the Second

Circuit has noted that such pre-arraignment conditions of confinement claims should be treated

as arising under the Fourteenth Amendment. *Shakir v. Stankye*, 2020 WL 1480141, at *3 (2d Cir.

Mar. 24, 2020) (summary order citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A

pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due

Process Clause of the Fourteenth Amendment. . . ."), and *Weyant,* 101 F.3d at 856–57 (analyzing

a pre-arraignment arrestee's denial of medical treatment claim under the Fourteenth Amendment

standard)).

Under the applicable Fourteenth Amendment standard, a pre-arraignment arrestee "may

establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing

that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849

F.3d at 29. The arrestee must allege that: (1) the denial was "sufficiently serious to constitute an

objective deprivation of the right to due process," *Darnell*, 849 F.3d at 30; and (2) the defendant

either "acted intentionally to impose the alleged condition, or recklessly failed to act with

reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though

the defendant-official knew, or should have known, that the condition posed an excessive risk to

health or safety," *id.* at 35 (relying on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). An allegation asserting malpractice or the negligent failure to provide adequate care does not state a constitutional claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Darnell*, 849 F.3d at 36 ("any § 1983 claim for violation of due process requires proof of a *mens rea* greater than mere negligence"). And "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to a [constitutional] violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Plaintiff fails to provide facts showing that the police were deliberately indifferent to her serious medical conditions by denying her medications. Although she asserts that she was sick and suffers from significant medical conditions, including high blood pressure, she does not allege any facts suggesting that while in police custody she required immediate medical attention and that the police denied her needed medications.

But the Court grants Plaintiff leave to amend this claim. If she files a second amended complaint, she should describe her medical condition at the time she was in police custody, state whether she required immediate medical care, and allege facts suggesting that the police treatment of her was deliberately indifferent, rising to the level of a constitutional violation.[8]

### 5.    Deprivation of Property

Plaintiff also brings this action seeking the return of property confiscated by the police, including the $10,000.00. A claim for deprivation of property is not cognizable in federal court if

---

[8] Plaintiff also claims that she was denied her medications at the Westchester County Jail. But she does not name any defendants involved in the alleged denial or indicates that she is bringing such a claim in this action. In any event, this assertion suffers from the same deficiency as her denial of medications claim against the police.

the state courts provide a remedy for the deprivation of that property [9] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (citations omitted). New York provides such an adequate post-deprivation remedy. *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983). Because Plaintiff does not allege facts suggesting that her remedy under state law is in any way inadequate or inappropriate, *see Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990), her claim with respect to the seized property must be dismissed.

**B.      Claims against Justice Warhit**

Plaintiff brings claims against Justice Warhit for his role in issuing the warrant and decisions made within the criminal proceedings. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

---

[9] A deprivation of property without due process claim under the Fourteenth Amendment is distinct from the unlawful seizure of property claim under the Fourth Amendment claim discussed above. The Fourth Amendment deals with the seizure of the property itself, rather than the defendants' later refusal to return the property, which would fall under Fourteenth Amendment. *See Fox v. Van Oosterum*, 176 F.3d 342, 350-51 (2d Cir. 1999) (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 70 (1992))

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Here, Plaintiff asserts that Justice Warhit unlawfully issued the search warrants and violated her rights in the ongoing state-court criminal proceedings, particularly by requesting further documentation of her medical conditions, attempting to override the travel restrictions recommended by her medical provider, and threatening her with jail if she did not show up for a court appearance. But these claims are based on Justice Warhit's actions within the scope of his judicial duties. Therefore, Plaintiff's claims against Justice Warhit are dismissed under the doctrine of judicial immunity and as frivolous. *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) (holding that "[a]ny claim dismissed on the ground of absolute judicial immunity is 'frivolous'").[10]

---

[10] Plaintiff also appears to challenge the jurisdiction of the state court over her criminal proceedings, asserting that the court and its judicial officials do not have jurisdiction because they lacked an "oath of office, anti-bribery statements, foreign registration statements, certificate of participation, signed oath or [a]ffirmation from judge or grand jury, [and] bond number/EIN number." (ECF No. 4, at 4, 14-16.) It is unclear what relief Plaintiff is seeking, but to the extent she is asking the Court to intervene in her pending state-court criminal proceeding, such claims must be dismissed. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 401 U.S. 37); *see also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."). Plaintiff alleges no facts showing bad faith, harassment, or irreparable injury with respect to her pending state-court criminal proceeding.

**C.     Claims against ADA Murray, Social Worker Wilson, and Harlem Hospital**

**1.     HIPAA**

Plaintiff asserts that Murray, Wilson, and Harlem Hospital[11] violated her right to privacy under the Health Insurance Portability and Accountability Act (HIPAA). HIPAA generally provides for the confidentiality of individually identifiable health information, *see* 42 U.S.C. §§ 1320d-1 to d-7, and it authorizes the Secretary of Health and Human Services to make final regulations and bring enforcement actions. *See* 42 U.S.C. § 300gg-22. HIPAA permits health care providers and other covered entities to disclose protected health information without patient consent in certain situations, such as in response to a court order. *See, e.g.*, 45 C.F.R. § 164.512(e)(1)(i), (ii). ).[12]

The Second Circuit has noted that "[i]t is doubtful that HIPAA provides a private cause of action," *Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015), and district courts in this circuit have uniformly held that it does not, *see, e.g., Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases for the

---

[11] Harlem Hospital is operated by the New York City Health+Hospitals (H+H), which is a public benefit corporation created by New York State law. *See* N.Y. Unconsol. Law § 7382; *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). As a municipal corporation, H+H, its hospitals, and employees are state actors for the purposes of § 1983. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); *Mejia v. NYC Health & Hosp. Corp.*, ECF 1:16-CV-9706, 130, 2018 WL 3442977, at 5 (S.D.N.Y. July 17, 2018). H+H has the capacity to be sued under state law. *See* N.Y. Unconsol. Law § 7385(1).

[12] Health care providers and other covered entities are permitted to disclose protected health information without patient consent: (1) in response to a court order, provided only the information specified in the court order is disclosed; or (2) in response to a subpoena or discovery request if the health care provider receives adequate assurance that the individual whose records are requested has been given sufficient notice of the request, or if reasonable efforts have been made to secure a protective order. *Id.* § 164.512(e)(1)(i), (ii). Protective orders must (1) prohibit use of the protected health information outside the litigation process; and (2) require the return or destruction of the records, including all copies made, at the conclusion of the litigation. *Id.* § 164.512(e)(1)(v).

proposition that "HIPAA does not provide for either an express or implied private right of action."); *Mele v. Hill Health Ctr.,* 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (holding that individuals cannot sue to enforce HIPAA or seek damages caused by such disclosures).

Plaintiff's allegations are insufficient to show a violation of HIPAA, and even if she could allege such a violation, HIPAA does not provide a private cause of action allowing an individual suit. The Court therefore dismisses Plaintiff's HIPAA claims against Murray, Wilson, and Harlem Hospital for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Prosecutorial Immunity

To the extent Plaintiff brings other claims against ADA Murray for his actions within the state-court criminal case, those claims must be dismissed. Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (holding that absolute immunity is analyzed under "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it"). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

Here, Plaintiff brings several claims against Murray – including acting in conjunction with Judge Warhit to document her medical conditions and threatening to jail her for not attending court proceedings – that are based on actions within the scope of his official duties and associated with the conduct of a trial. Therefore, these claims are dismissed because they seek

monetary relief against a defendant who is immune from suit and as frivolous. 28 U.S.C.

§ 1915(e)(2)(b)(i), (iii); *see Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (holding that

claim against prosecutor is frivolous if it arises from conduct that is "intimately associated with

the judicial phase of the criminal process").

**3.**    **Discrimination Claims**

Plaintiff further asserts that Wilson and others at Harlem Hospital have discriminated

against her and engaged in racial profiling and ostracism. (*See* ECF 4, at 9) But Plaintiff does not

allege any facts in support of these claims.

Plaintiff's assertions could be read as arising under the Fourteenth Amendment's Equal

Protection Clause, which prohibits the disparate treatment of similarly situated individuals. *See*

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Brown v. City of*

*Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012). To state an equal protection claim, a plaintiff must

allege that she is a member of a suspect or quasi-suspect class of persons, *see Giano v.*

*Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995); such classes include, but are not limited to,

classes identified by race, gender, alienage, or national origin, *see Myers v. Cnty. of Orange*, 157

F.3d 66, 75 (2d Cir. 1998). The plaintiff must also allege facts showing that the defendants have

purposefully discriminated against the plaintiff because of her membership in that class. *See*

*Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 676, *rev'd and*

*vacated in part on other grounds sub nom.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)); *Giano*, 54

F.3d at 1057. "[P]urposeful discrimination requires more than intent as volition or intent as

awareness of consequences. It instead involves a decisionmaker's undertaking a course of action

because of, not merely in spite of, [the action's] adverse effects upon an identifiable group."

*Turkmen*, 789 F.3d at 252 (quoting *Iqbal*, 556 U.S. at 676-77) (internal quotation marks and citations omitted, alterations in original).

Plaintiff does not allege any facts suggesting that Wilson or anyone else treated her differently from other similarly situated individuals or that any such treatment was based on an immutable characteristic – such as race – or any other improper factor. But Plaintiff may provide in the second amended complaint any facts suggesting that Wilson or any other defendant treated her differently because of a protected characteristic.

**D.     State Law Claims**

Finally, Plaintiff, invoking the Court's diversity jurisdiction, asserts defamation of character, libel, and other state-law claims. But Plaintiff fails to allege facts demonstrating that the Court has diversity jurisdiction over her state-law claims. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Plaintiff indicates in the amended complaint that both she and Defendants reside in New York, precluding complete diversity of citizenship.

The federal district courts have, however, supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Lastra v. Barnes and Noble Bookstore*, ECF 1:11-CV-2173, 35, 2012 WL 12876, at *8 (S.D.N.Y. Jan. 3, 2012). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its

exercise," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and it includes a provision stating that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because it is not clear whether Plaintiff can state any federal claims, the Court reserves judgment at this time on whether to exercise its supplemental jurisdiction over potential state law claims.

## LEAVE TO AMEND

Plaintiff is granted leave to submit a second amended complaint detailing her claims as described above.[13] Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the second amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's second amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

---

[13] Should Plaintiff choose to file a second amended complaint, the Court strongly encourages her to ask for assistance from someone who can help her organize claims. If Plaintiff needs legal advice related to this matter, she may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. A copy of a flyer with details of the clinic is attached to this order.

Essentially, the body of Plaintiff's second amended complaint must tell the Court: who violated her federally protected rights; what facts show that her federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wishes to maintain must be included in the second amended complaint.

## CONCLUSION

Plaintiff is granted leave to file a second amended complaint that complies with the standards set forth above. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as a "Second Amended Complaint," and label the document with docket number 20-CV-2712 (LLS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, this action will be dismissed for failure to state a claim upon which relief may be granted.

This order is to be mailed in chambers.

SO ORDERED.

Dated:   May 6, 2020
         New York, New York

*Louis L. Stanton*
Louis L. Stanton
U.S.D.J.

# <u>Notice For</u>
# <u>Pro Se Litigants</u>

**As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.**

**Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.**

**If you need the assistance of the clinic, please call <u>212-659-6190</u> and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.**

**Please be patient because our responses to your messages may be delayed while we transition to phone appointments.**





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-


_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____

(Include case number if one has been assigned)

**SECOND AMENDED COMPLAINT**

Do you want a jury trial?
☐ Yes     ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                    (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.   PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_____

First Name                    Middle Initial          Last Name

_____

Street Address

_____

County, City                              State                    Zip Code

_____

Telephone Number                          Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:
_____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                          State                    Zip Code

Defendant 2:
_____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                          State                    Zip Code

Defendant 3:
_____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                          State                    Zip Code

Defendant 4: _____

First Name           Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City         State         Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |

| First Name | Middle Initial | Last Name |

| Street Address |

| County, City | State | Zip Code |

| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____


_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address

_____
Date          Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007